IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROGELIO DE ARCHIBOLD, *et al.* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:03-CV-1871-N |
| | § | |
| UNITED STATES OF AMERICA | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Suggestion of Lack of Subject Matter Jurisdiction and Motion to Dismiss, filed April 22, 2005. Because no basis for subject matter jurisdiction exists under either 28 U.S.C. § 1331 or 28 U.S.C. § 1346, the Court grants the Defendant's motion to dismiss.[1]

### I. ORIGINS OF PLAINTIFFS' CLAIMS AGAINST THE UNITED STATES FOR UNPAID EMPLOYMENT BENEFITS

Plaintiffs, including Rogelio DeArchibold, are citizens of the Republic of Panama and former employees of the Army Air Force Exchange Service ("AAFES"), a commissary program for military personnel administered by the Department of Defense. The AAFES had responsibilities in the Panama Canal Zone during the transition period from 1979 to 1999,

---

[1]Plaintiffs' Motion for Leave to File Reply to Response to Rejoinder is also denied. Previous filings by defendant, including previously granted leave to file a rejoinder to the Defendant's reply on this motion, sufficiently explain their arguments. Further, the citation of new authorities by opposing party in order to support arguments presented in a prior filing does not constitute grounds for additional filings.

after the United States had transferred sovereignty of the Canal to Panama, but before it

transferred operation of the Canal.  Plaintiffs claim that under the terms of the Panama Canal

Treaty, September 7, 1977, U.S.-Panama, 33 U.S.T. 39  (the "Treaty") and the Agreement

in Implementation of Article IV of the Panama Canal Treaty, September 7, 1977, U.S.-

Panama, 33 U.S.T. 307 (the "Implementing Agreement"), Defendant United States was

obligated to provide the Plaintiffs with certain employment benefits guaranteed under

Panamanian law and that it failed to do so.

In prior proceedings, the Court of Federal Claims ("Claims Court") dismissed

Plaintiffs' Complaint for lack of subject matter jurisdiction under 28 U.S.C. § 1491, but

transferred the case to this Court pursuant to Plaintiffs' alternative invocation of subject

matter jurisdiction in a federal district court under 28 U.S.C. § 1331.  The government

subsequently moved to dismiss based on treaty construction, failure to exhaust administrative

remedies, and res judicata; the Court denied that motion by Order dated September 16, 2005.

The government now brings this motion seeking dismissal for lack of subject matter

jurisdiction.  Plaintiffs allege 28 U.S.C. § 1331 and 28 U.S.C. § 1346 as the bases for subject

matter jurisdiction.

## II.  THIS COURT'S SUBJECT MATTER JURISDICTION DEPENDS ON A VALID WAIVER OF SOVEREIGN IMMUNITY

"Federal courts are courts of limited jurisdiction.  They possess only that power

authorized by Constitution and statute, which is not to be expanded by judicial decree."

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "We must presume

that a suit lies outside this limited jurisdiction, and the burden of establishing federal

jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

The United States may not be sued without its consent. *United States v. Lee*, 106 U.S. 196, 205 (1882); *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 411-412 (1821); *Delta Commercial Fisheries Ass'n v. Gulf of Mex. Fishery Mgmt.*, 364 F.3d 269, 273 (5th Cir. 2004). Accordingly, the waiver of sovereign immunity is a fundamental prerequisite to subject matter jurisdiction. *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *Delta Commercial Fisheries*, 364 F.3d at 273. Further, waivers of sovereign immunity require an "unequivocal expression" in the enacting text and should be "strictly construed, in terms of scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996); *see also Comm. Union Ins. Co. v. United States*, 928 F.2d 176, 180 (5th Cir. 1991) (waivers of sovereign immunity "must be specific and explicit and cannot be implied by construction of an ambiguous statute"). Particularly, "[t]o sustain a claim for monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims." *Pena*, 518 U.S. at 192.

The requirement that waivers of sovereign immunity be unequivocally expressed extends to treaties as well as statutes. *See Can. Transp. Co. v. United States*, 663 F.2d 1081, 1092 (D.C. Cir. 1980); *W. Shoshone Nat'l Council v. United States*, 408 F. Supp. 2d 1040, 2005 WL 3620678, *8 (D. Nev. Nov. 1, 2005). "In the absence of specific language in the treaty waiving the sovereign immunity of the United States, the treaty must be interpreted in

MEMORANDUM OPINION AND ORDER – PAGE 3

accord with the rule that treaty violations are normally to be redressed outside the courtroom." *Id*.

In meeting their burden, Plaintiffs may rely upon their complaint and need not provide evidentiary support.  The government's facial attack "require[s] the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion."[2] *Santerre v. Agip Petroleum Co., Inc.*, 45 F. Supp. 2d 558, 566 (S.D. Tex. 1999) (quotations omitted); *see Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981).  The Court will thus look to assertions in Plaintiffs' complaint to establish subject matter jurisdiction.

### III. PLAINTIFFS PRESENT NO VALID WAIVER OF SOVEREIGN IMMUNITY AS REQUIRED FOR JURISDICTION UNDER 28 U.S.C. § 1331

Neither 28 U.S.C. § 1331 nor the Constitution waive the federal government's sovereign immunity.  *Garcia v. United States*, 666 F.2d 960, 966 (5th Cir. 1982). Consequently, district court jurisdiction cannot be based upon section 1331 unless some other Act of Congress waives sovereign immunity.  *Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005).   Here, the Plaintiffs assert that specific provisions of the Implementing Agreement provide the required waiver.

The Claims Court's prior opinion did not recognize a waiver of sovereign immunity. The court stated only that "[i]t is not sufficiently clear to the court that there is no federal claim because there are circumstances when a self-executing treaty may provide the basis for

---

[2]The government makes only a facial attack on subject matter jurisdiction; it argues only that the basis for jurisdiction presented in Plaintiffs' complaint is not sufficient.

a private right of action.  *See Igartua de la Rosa v. United States*, 32 F.3d 8, 10 n.1 (1st Cir. 1994); *Dreyfus v. Von Finck*, 534 F.2d 24, 30 (2d Cir. 1976)."  *DeArchibold v. United States*, 57 Fed. Cl. 29, 34 (2003).  The Claims Court plainly leaves open the issue of the viability of a federal claim under section 1331, including any waiver of sovereign immunity.[3]

Plaintiffs contend that two provisions within the Implementing Agreement give benefits and a remedy, and thus together constitute an effective waiver of sovereign immunity.  First, they assert that Article VII, sections 1-5 of the Implementing Agreement obligate the United States to provide Plaintiffs with certain employment benefits under Panamanian law.  Second, they argue that Article XX, section 11 of the Implementing Agreement provides a remedy of a claim for monetary damages in United States courts.  That section states, "Contractual claims against the United States Forces shall be settled in accordance with the dispute clause of the contracts, and in the absence of such clause, through presentation of claims to the United States authorities through the appropriate

---

[3]The analysis presented by the parties conflates the related but distinct issues of privately enforceable rights, self-executing treaties, and waivers of sovereign immunity. Whether treaty rights are self-executing depends upon the nature of the rights concerned.  A treaty must be self-executing, i.e., it must "prescribe[] rules by which private rights may be determined," in order to provide private rights.  *Dreyfus*, 534 F.2d at 30.  *Dreyfus*, however, concerned the determination of treaty rights for one private party to be brought against another private party.  *Id.* at 26.  As is the case for statutory private rights, a right to be asserted against the federal government requires more than a right between two private parties.  *See, e.g., Dorsey v. U.S. Dept. of Labor*, 41 F.3d 1551, 1555 (D.C. Cir. 1994.) Particularly, asserting a treaty right against the federal government requires a waiver of sovereign immunity in order to be self-executing.  *See Can. Transp.*, 663 F.2d at 1092; *W. Shoshone*, 2005 WL 3620678 at *8.

channels."[4]  Plaintiffs argue that "presentation of claims to the United States authorities through appropriate channels" necessarily includes courts of the United States.  Together, Plaintiffs argue, these provisions effect a waiver of sovereign immunity.[5]  The Court disagrees for three reasons.

First, courts of the United States are by no means the standard or default remedy for rights provided in treaties.  *See Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 376 (7th Cir. 1985) (referring to the "principle that violations of international agreements are normally to be redressed outside the courtroom") (internal quotations omitted); *George E. Warren Corp. v. United States*, 94 F.2d 597, 599 (2d Cir. 1938) ("It is not for a court to say whether a treaty has been broken or what remedy shall be given."); *Edye v. Robertson*, 112 U.S. 580, 598 (1884) ("A treaty is primarily a compact between independent nations.  It depends for the enforcement of its provisions on the interest and the honor of the governments which are parties to it.  If these fail, its infraction becomes the subject of

---

[4]The Claims Court previously ruled that the Implementing Agreement is a treaty rather than a contract.  *DeArchibold*, 57 Fed. Cl. at 32 (relying on *Hughes Aircraft Co. v. United States*, 534 F.2d 889, 903 n.17 (Ct. Cl. 1976) and *Bonanno v. United States*, 12 Cl. Ct. 769, 772 (1987)).  The Court adopts this finding.  Thus, claims brought concerning rights allegedly given by the Implementing Agreement were not contractual claims.  As Article XX, section 11's application is limited to contractual claims by its own terms, that section is inapplicable to the treaty rights asserted by the Plaintiffs here.  Accordingly, this Court alternatively finds this alone enough to dismiss Article XX, section 11 as a possible basis for waiver of sovereign immunity.

[5]While they never say as much, Plaintiffs essentially argue that the two discussed provisions constitute a "sue-or-be-sued" clause.  When present, such clauses have been held to waive sovereign immunity in statutes.  *See, e.g., F.D.I.C. v. Meyer*, 510 U.S. 471, 480-81 (1994).

international negotiations and reclamations, so far as the injured party chooses to seek redress, which may in the end be enforced by actual war.").  Indeed, the well established principle that the ability to sue the United States in its own courts requires an unequivocal waiver of sovereign immunity would seem to lead to the opposite default position.

Second, the Implementing Agreement itself sets out the "appropriate channels," and does not include United States courts.  A cursory inspection of other sections of Article XX of the Implementing Agreement presents various other channels for resolving disputes, including: (1) diplomatic channels, for damage to property (section 2), (2) civil courts of the Republic of Panama, for persons outside their official duties to the United States Forces (section 6), and (3) presentation through the Joint Committee to "appropriate authorities of the United States Forces for settlement" for non-contractual claims arising from performance of duties (section 8).  The presence of discreet and limited other authorities to which parties may present claims contradicts the inference that "appropriate channels" necessarily include courts of the United States.

Third, the waiver of sovereign immunity alleged here is not unequivocal.  Dictionaries define unequivocal as "unambiguous; clear; free from uncertainty" and "having only one possible meaning."  BLACK'S LAW DICTIONARY 1563 (8th ed. 2004); RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 2067 (2d ed. 2001); *Cf. United States v. Nordic Village, Inc.*, 503 U.S. 30, 34-37 (1992) (concluding that the existence of plausible alternative interpretations means language does not qualify as an unambiguous waiver of sovereign immunity).  The phrase "appropriate channels" has several plausible alternative

MEMORANDUM OPINION AND ORDER – PAGE 7

interpretations, as demonstrated above.  It may include any combination of diplomatic channels, administrative channels in various government entities, or dispute resolution channels such as arbitration, mediation, or hearing before an established committee.  It could also conceivably include legal channels in Panama, the United States, or in some other forum to which the parties had agreed.  Here, "appropriate channels" does not have only one possible meaning nor is it free from uncertainty.  If anything is unequivocal about "appropriate channels," it is its ambiguous meaning.  The Plaintiffs presents no further basis for an unequivocal waiver of sovereign immunity.  Thus, Plaintiffs demonstrate neither an effective nor an unequivocal waiver of sovereign immunity in either the Implementing Agreement or Treaty.  Accordingly, 28 U.S.C. § 1331 does not provide subject matter jurisdiction.

## IV.  THIS COURT'S CONCURRENT JURISDICTION WITH THE COURT OF FEDERAL CLAIMS UNDER 28 U.S.C. § 1346(A) PRECLUDES JURISDICTION OVER MATTERS DEPENDENT ON A FOREIGN TREATY

In addition to 28 U.S.C. § 1331, Plaintiffs assert that 28 U.S.C. § 1346 provides subject matter jurisdiction.  Specifically they assert "jurisdiction under 28 U.S.C. § 1346 to the extent Plaintiffs' claims are founded upon an express or implied contract with AAFES or other claims for liquidated or unliquidated damages not sounding in tort . . . ."  (Second Amended Complaint ¶ 3).

Also known as the Tucker Act, subsection (a)(2) of section 1346 deals with such claims and states:

> The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of: . . . (2) Any other civil action or claim

against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, . . . .

28 U.S.C. § 1346(a). Unlike 28 U.S.C. § 1331, this provision "constitutes a waiver of sovereign immunity with respect to those claims against the United States falling within the jurisdiction of the Claims Court under the Tucker Act." *Amoco Prod. Co. v. Hodel*, 815 F.2d 352, 359 (5th Cir. 1987) (citing *United States v. Mitchell*, 463 U.S. 206, 212-16 (1983)).

Section 1346(a)(2) codifies a portion of the Tucker Act giving the district courts and the Claims Court concurrent jurisdiction. *See United States v. Sherwood*, 312 U.S. 584, 591 (1941). When a district court hears a claim arising under the Tucker Act, it sits as a "little claims court." *Zumerling v. Marsh*, 783 F.2d 1032, 1035 (Fed. Cir. 1986). Thus, for the purpose of jurisdiction arising under section 1346(a)(2), the district courts may not hear any case that the Claims Court could not itself hear.[6] *Id.*; *Richardson v. Morris*, 409 U.S. 464, 466 (1973); *Zumerling*, 783 F.2d at 1035-36; *Crocker v. United States*, 37 Fed.Cl. 191, 200 (1997).

Specifically, the jurisdictional prohibition on the Claims Court from hearing treaty derived claims applies to the Tucker Act jurisdiction of this Court. *Warren Corp.*, 94 F.2d at 599-600 (2d Cir. 1938); *Estate of Arroyo Gonzalez v. Wadsworth*, 440 F. Supp. 236, 237-38 (D.P.R. 1976). This prohibition appears in 28 U.S.C. § 1502, which states that "the

---

[6]To be clear, district courts may hear claims beyond the jurisdiction of the Claims Court, they just require an alternative basis of jurisdiction (outside of section 1346(a)(2)) in order to do so.

United States Court of Federal Claims shall not have jurisdiction of any claim against the United States growing out of or dependent upon any treaty entered into with foreign nations." 28 U.S.C. § 1502.  As the Second Circuit explained in *Warren Corp.*, legislative history supports the conclusion that this restriction also applies to the Tucker Act jurisdiction of district courts.  *See Warren Corp.*, 94 F.2d at 599-600.

The jurisdictional prohibition from foreign treaties shared by Claims Court and the district courts can be traced back nearly 150 years through numerous statutory codifications and three distinct phases.  First, Congress created  the Claims Court and limited its jurisdiction over treaties with foreign nations.  Congress enacted the predecessor to section 1502, prohibiting jurisdiction over claims derived from foreign treaties, as section 9 of the Act of March 3, 1863 ("Section 9 of 1863").  Ch. 92, 12 Stat. 765, 767; *see Warren Corp.*, 94 F.2d at 599; 28 U.S.C.A. § 1502 (West 1994) (history).[7]  Both the Claims Court and Section 9 of 1863 existed prior to the passage of Tucker Act.  *Warren Corp.*, 94 F.2d at 599.

Next, Congress passed the Tucker Act granting concurrent jurisdiction to the Claims Court and the district courts, and the Supreme Court held that the jurisdictional prohibition still applied after the Tucker Act's enactment.  The Tucker Act granted concurrent jurisdiction to the Claims Court and district courts in adjacent sections, enacting today's

---

[7]In *Warren Corp.*, sections 1346 and 1502 are referred to by their codification at the time of that opinion, 28 U.S.C. § 41(20) and 28 U.S.C. § 259, respectively.  See *Warren Corp.*, 94 F.2d at 599-600; 28 U.S.C.A. § 1346 (West 1993) (history); 28 U.S.C.A. § 1502 (West 1994) (history).  Apart from the changes that are discussed, the language in corresponding sections relevant to this discussion has remained substantially similar. *See id.*; Act of March 3, 1863, ch. 92, 12 Stat. 765, 767; Tucker Act of March 3, 1887, ch. 359, 24 Stat. 505.

section 1346 as section 2 of the Tucker Act of March 3, 1887 ("Section 2 of 1887").  Ch.

359, 24 Stat. 505; *see Warren Corp.*, 94 F.2d at 600; 28 U.S.C.A. § 1346 (West 1993)

(history).  The Tucker Act also repealed all inconsistent enactments.  *Warren Corp.*, 94 F.2d

at 599-600*;* Tucker Act of March 3, 1887, ch. 359, 24 Stat. 505, 508.  The question then

arose before the Supreme Court whether the Tucker Act had thus repealed Section 9 of 1863;

the Court found it did not.  *See E. Extension, Australasia & China Tel. Co. v. United States*,

231 U.S. 326, 332 (1913); *Warren Corp.*, 94 F.2d at 600.  As a consequence, "the jurisdiction

of the District Courts was no broader than that of the Court of Claims; the exclusion of

claims growing out of treaty stipulations was as applicable to the District Courts as to the

Court of Claims."  *Warren Corp.*, 94 F.2d at 600.

Finally, the provisions granting jurisdiction to Claims Court and jurisdiction to the

district courts were place in separate parts of the statute, and the Second Circuit held that this

separation did not free the district courts from the prior jurisdictional prohibition.  In 1911,

the provision in the United States Code granting jurisdiction to the district courts (originally

Section 2 of 1887) was moved to a place in Title 28 apart from the language granting

jurisdiction to the Claims Court.  *Id.*  In 1938, the Second Circuit held:

> This change in form cannot be construed to have conferred upon the District
> Courts jurisdiction over a matter not conferred upon them by the act of 1887.
> It must still remain true that obligations of the United States directly resulting
> from a treaty cannot be determined either by the Court of Claims or by the
> District Court sitting as a court of claims.

*Id.*  Accordingly, this Court's jurisdiction under the Tucker Act does not extend to matters

dependent on a treaty with foreign nations.

MEMORANDUM OPINION AND ORDER – PAGE 11

The claims that Plaintiffs bring before this Court split into two groups: (1) the claims present in the previous complaint that appeared before the Claims Court (Second Amended Complaint ¶ 9-11), and (2) the claims that Plaintiffs added when they amended the complaint for this Court (Second Amended Complaint ¶ 12-14). The Claims Court previously addressed Plaintiffs' assertion of the Tucker Act as a basis for subject matter jurisdiction over their claims. *See DeArchibold*, 57 Fed. Cl. at 29. Its determinations do not bind this Court, but they are persuasive.[8] *See* FED. R. CIV. P. 54(b); *Ala. Hosp. Ass'n v. United States*, 656 F.2d 606, 610 (Cl. Ct. 1981). The two courts have concurrent jurisdiction, as established above, and the statutory language under which the Plaintiffs seek jurisdiction is virtually identical.[9] *Compare* 28 U.S.C. § 1346(a)(2) *with id.* § 1491(a)(1). With the applicability of section 1502 to section 1346 also established, the Court will follow the Claims Court's prior analysis. Accordingly, this Court finds the Claims Court's reasoning that it lacked subject

---

[8]The determinations made by the Claims Court prior to transfer do not constitute a final judgement. FED. R. CIV. P. 54(b). Instead, the transfer to this Court from the Claims Court more closely resembles a transfer under 28 U.S.C. § 1404. Courts consider factors such as judicial economy, equitable treatment of litigants, and adherence to just outcomes in reviewing a prior trial court's determinations. *See Wilson v. Turnage*, 755 F.2d 967, 967-68 (D.C. Cir. 1985) *transferred to* 791 F.2d 151 (Fed. Cir. 1986); *Dynalectron Corp. v. United States*, 4 Cl. Ct. 424, 431(1984); *see generally* 18B CHARLES ALLEN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4478.4 (2d ed. 2002).

[9]Unlike section 1491(a)(1), section 1346(a)(2) restricts the amount of claim to no more than $10,000. *Compare* 28 U.S.C. § 1346 *with* § 1491. Neither party puts this requirement at issue here.

MEMORANDUM OPINION AND ORDER – PAGE 12

matter jurisdiction over Plaintiff's previously asserted claims to be sound and adopts it here.[10]
*See DeArchibold*, 57 Fed. Cl. at 32-34.

The same reasoning applies to the new claims added by the Plaintiffs in their Second Amended Complaint.  The parties in their briefs seem to assume and agree that 28 U.S.C. § 1502 applies with equal force to Plaintiffs' new claims, as those claims also arise out of the United States' treaty obligations.  Thus, the Court extends the Claims Court's reasoning to these additional claims.  As a result, this Court does not have subject matter jurisdiction over any of Plaintiffs' claims under 28 U.S.C. § 1346.

Accordingly, Plaintiffs have presented no valid basis for subject matter jurisdiction and the Court grants Defendant United States' motion to dismiss for lack of subject matter jurisdiction.

Signed March 23, 2006.

David C. Godbey
United States District Judge

---

[10]Specifically, this Court agrees that the Implementing Agreement is a treaty rather than a contract and adopts the Claims Court findings of no express contract, no implied contract within the Court's Tucker Act jurisdiction, and no obligations arising out of Panamanian law reachable by this Court.  *See DeArchibold*, 57 Fed. Cl. 29.

MEMORANDUM OPINION AND ORDER – PAGE 13